UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DARRELL TURNER )<br>)<br>v.  )<br>)<br>UNITED STATES OF AMERICA ) | Cause No. 3:06-CV-797 RM<br>(arising out of 3:03-CR-22(02) RM) |

OPINION AND ORDER

Petitioner Darrell Turner, proceeding *pro se*, seeks relief from his conviction and sentencing under 28 U.S.C. § 2255. Mr. Turner also seeks an evidentiary hearing on his claims. The filing of a § 2255 petition doesn't automatically give rise to a right to an evidentiary hearing. Cooper v. United States, 378 F.3d 638, 641-642 (7th Cir. 2004); Patel v. United States, 19 F.3d 1231, 1234 (7th Cir. 1994). If a § 2255 petitioner alleges facts that would entitle him to relief, he may request and receive a hearing on his claims. Cooper v. United States, 378 F.3d 641. No hearing is required if "the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255. As discussed below, Mr. Turner has alleged no facts that would entitle him to relief, so no hearing is needed to decide his § 2255 petition, Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000), and his petition must be denied.

BACKGROUND

Mr. Turner was represented through trial by court-appointed attorney Brian May. Just before trial, Mr. Turner pleaded guilty to Counts 1,3, and 6 of a seven-count indictment, charging him with possession with intent to distribute cocaine base [Counts 1 and 3] in violation of 21 U.S.C. § 841(a)(1), and maintaining a crack house [Count 6] in violation of 21 U.S.C. § 856(a)(1). Mr. Turner admitted he lived in a home in Michigan City where crack was sold, and that he sold crack cocaine to informants on January 30, 2003. He went to trial on the remaining counts and a jury found Mr. Turner guilty of possession of a firearm in furtherance of drug trafficking activity [Counts 2 and 4] in violation of 18 U.S.C. § 924(c)(1), possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year [Count 5] in violation of 18 U.S.C. § 922(g)(1), and assault of a witness to prevent communication with law enforcement [Count 7] in violation of 18 U.S.C. § 1512(a)(2)(C).

At trial, the jury heard testimony that in November 2002 Mr. Turner and his brother and co-defendant, Adom Daniels, rented an apartment in Michigan City, Indiana for the purpose of selling drugs. Mr. Turner, Mr. Daniels and other people from Hammond sold drugs from the apartment and had what the informant characterized as "pretty heavy foot traffic." It appeared to the informant that Mr. Turner and Mr. Daniels were in charge of the drug sales.

On January 30, 2003, Mr. Turner, while in the possession of two different firearms, sold drugs to two different informants. LaRon Ross, facing charges of dealing crack cocaine, agreed to make a controlled buy at Mr. Turner's apartment.

Mr. Ross testified that Mr. Turner opened the door with a handgun tucked into his waistband with the butt visible. Mr. Ross later identified the gun as government's Exhibit 15. Mr. Turner walked Mr. Ross upstairs to the kitchen where Mr. Daniels was waiting and told him "AD he the one want them two." Mr. Daniels retrieved the drugs from the pantry and completed the transaction while Mr. Turner was standing in the bedroom a few feet away. Mr. Ross returned to the surveillance officers with 5.8 grams of 72% pure cocaine base. Later the same day, Mickey Shipp agreed to make a controlled buy at Mr. Turner's apartment. Mr. Shipp testified that Mr. Turner answered the door with a shotgun in his hands. Mr. Turner sold Mr. Shipp $50 worth of crack and told him that his brother was "coming back with enough for all of us." After the transaction, Mr. Shipp returned to the surveillance officer with .68 grams of 78% pure cocaine base.

     A search warrant was executed at the apartment the following day. Although no drugs were found, police found a loaded Rossi .38 caliber revolver, a loaded Mossberg shotgun, ammunition for the two weapons, and $493.85 in cash, which included the $50 Mr. Shipp used to make a purchase the day before.

     Mr. Ross was later arrested for keeping some of the drugs from another controlled buy and was placed in the same cell block as Mr. Daniels and Mr. Turner, who proceeded to beat him while yelling "snitch" and "die". A LaPorte County Sheriff's Department deputy testified that Mr. Ross' entire head was covered in blood, his ear was ripped, and he was naked from the waist down.

At trial, Mr. May based Mr. Turner's defense on attacking the credibility of Mr. Ross and Mr. Shipp. Particularly, Mr. May argued that the government's gun charges were based on unreliable information, in part because evidence suggested that the weapon Mr. Ross initially described was not the same revolver that was later identified at trial. Mr. May moved for a directed verdict at the conclusion of the government's case on the weapon charges. During his closing argument, Mr. May again attacked the government's case emphasizing the unreliability of the informants and lack of fingerprint evidence linking Mr. Turner to the weapons.

In his trial testimony, Mr. Turner denied that he possessed the weapons, arguing instead that the shotgun and handgun were connected to Mr. Daniels and Mr. Shipp and as far as he knew the guns were kept at Mr. Shipp's apartment. Mr. Turner admitted to operating a crack house that served between 3 and 10 customers a day purchasing crack cocaine. He denied knowing that Mr. Ross was the snitch responsible for his arrest, but admitted to assaulting him.

Mr. May moved to withdraw as counsel following trial.  The court granted this request and appointed attorney Mark Lenyo to represent Mr. Turner on sentencing and appeal. Mr. Lenyo raised several objections to the pre-sentence report, including proposed enhancements for drug quantity, grouping of counts, denial of acceptance of responsibility, the physical restraint of the assault victim and obstruction of justice based on false testimony. Mr. Turner continued to deny possessing the revolver and shotgun and objected to being punished for two § 924(c) offenses, arguing that it was not clear that the jury linked the two guns to

4

separate drug trafficking offenses. The court overruled nearly all of these objections, sustaining only the objection for obstruction of justice. The court determined that, based on Mr. Turner's account of the amount of crack cocaine he sold, he was responsible for more than 50 but less than 150 grams of cocaine base. Mr. Turner received two-level enhancements for being the leader of less than five participants in connection with operating a crack house, for providing false testimony at trial, and for the physical restraint of the assault victim. Mr. Turner was found to be a level 36 offender with a category III criminal history. Mr. Turner was sentenced to concurrent terms of 240 months imprisonment on Counts 1, 3, 6 and 7, a consecutive term of 13 months on Count 5, and terms of 60 months and 300 months on Counts 2 and 4 to be served consecutively to each other and to the other terms imposed. His aggregate term of imprisonment was 613 months.

 Mr. Lenyo filed a timely appeal addressing whether Mr. Turner's sentenced had been enhanced based on evidence that he neither admitted to nor which were found by a jury, and whether Mr. Turner's multiple firearm convictions should be reversed because they could be linked to a single offense. The court of appeals ordered a limited remand to the district court to determine whether the court would impose the same sentence in light of the holding of United States v. Booker, 543 U.S. 220 (2005). This court found that it would still impose the original sentence were it to resentence Mr. Turner in light of the factors set forth in 18 U.S.C. § 3553(a). The court of appeals then affirmed. No petition for a writ of

5

certiorari was filed. Mr. Turner filed a *pro se* motion to recall the mandate; the court of appeals denied the motion.

Mr. Turner's *pro se* 2255 petition raises seven[1] separate incidents of inefficient assistance of counsel: four concerning Mr. May's trial representation and three concerning Mr. Lenyo's representation on sentencing and appeal.

## ANALYSIS

"The court may vacate or correct [Mr. Turner's] sentence if he can show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack," Hays v. United States, 397 F.3d 564, 566-567 (7th Cir. 2005) (citations and quotations omitted), but such relief is "reserved for extraordinary situations." Id. at 566. Mr. Turner alleges various instances of ineffective assistance of counsel that, he says, provide such extraordinary circumstances.

The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. An attorney must not only be present with a criminal defendant at his trial, but must assist the defendant in a way that ensures the trial is fair. Strickland v. Washington, 466 U.S. 668, 685

---

[1] Mr. Turner initially raised eight claims, but his reply brief conceded his argument that Mr. Lenyo was ineffective for not addressing Mr. May's alleged ineffective assistance of counsel on appeal.

(1984). A fair trial is one in which the adversarial process functions properly to produce a just result. Strickland, 466 U.S. at 686.

> In order to establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors the result of the proceeding would have been different. In terms of the performance prong, judicial scrutiny of counsel's performance must be highly deferential. Only those who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. The burden for a defendant is high when he attempts to contend his counsel's trial strategy was ineffective because *Strickland* builds in an element of deference to counsel's choices in conducting the litigation. In order to establish prejudice under the second prong, the unprofessional errors of counsel must be so egregious that the trial was rendered unfair and the verdict rendered suspect.

Rodriguez v. United States, 286 F.3d 972, 983 (7th Cir. 2002) (citations and quotations omitted.)

To succeed, Mr. Turner must demonstrate both deficient performance and actual prejudice to show that his Sixth Amendment right to counsel was violated. Rodriguez v. United States, 286 F.3d at 983. Deficient performance is "measured against an objective standard of reasonableness, under prevailing professional norms." Rompilla v. Beard, 545 U.S. 374, 380, 125 S. Ct. 2456, 2462 (2005) (citations and quotations omitted). Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rompilla v. Beard, 545 U.S. at 390, 125 S. Ct. at 2467 (*citing* Strickland v. Washington, 466 U.S. at 694). Mr. Turner isn't

7

able to satisfy either Strickland's objective standard of reasonable effectiveness or the actual prejudice prong. Either finding alone defeats Mr. Turner's Sixth Amendment claim and results in the denial of his § 2255 petition.

INEFFECTIVE ASSISTANCE BY MR. MAY

Mr. Turner's first allegation of ineffective assistance of counsel against Mr. May stems from his response of "I don't have a dog in this fight" to the government's moving to introduce an undisputed exhibit. The exhibit was a book of rental notes kept by the manager of Mr. Turner's apartment being introduced to show that Mr. Turner had rented the apartment in question—a fact Mr. Turner admitted. Mr. Turner believes that this statement gave the impression that defense counsel had nothing to fight with and thus no confidence in his client's cause. According to Mr. Turner, "[t]his admission even if true should never have been made to the Jury." Mr. Turner says this "colorful outburst" prejudiced his defense and that it is reasonable to posit that the outcome would have been different if Mr. May wouldn't have made the remark.

As the Sixth Circuit in Campbell v. United States stated in regards to specific comments made by defense counsel to the jury during opening statements, such "comments of counsel do not amount to constitutionally ineffective assistance." 364 F.3d 727, 733 (6th Cir. 2004). The evidence sought to be introduced was uncontested. Throughout the rest of the trial Mr. May vigorously called into question Mr. Ross' and Mr. Shipp's credibility in attempting

8

to undermine the government's weapons charge against Mr. Turner. Although Mr. May's comment might have been more colorful than the usual "no objection", it was not ineffective assistance of counsel under Strickland.

Mr. Turner's next claim is that Mr. May's failure to call Stephanie Stevens and Sabrina Townsend as witnesses to rebut Mr. Shipp's testimony was unreasonable and prejudicial. Mr. Turner claims that Ms. Stevens and Ms. Townsend were both present the whole afternoon and evening of January 30, including when Mr. Shipp bought drugs, and saw no gun at the apartment. Ms. Stevens in a recorded statement allegedly claimed that she hadn't seen a gun at the residence in weeks. Mr. Turner argues that Mr. May's failure to investigate or present any evidence to rebut Mr. Shipp's testimony amounts to ineffective assistance of counsel.

Mr. May states in his affidavit that since Ms. Stevens (a fifteen year old girl) testified for the government and did little to add to the government's case on the weapons charge, he "felt it best not to do an exhaustive cross examination." He also felt that his cross-examination of Mr. Shipp at trial had sufficiently undermined his credibility.

Courts generally decline to second guess the strategic choices of attorneys. See United States v. Pergler, 233 F.3d 1005, 1009 (7th Cir. 2000) ("When reviewing ineffective assistance of counsel claims, we presume that the attorneys made reasonable judgments and decline to second guess strategic choices."). Mr. May's tactic of choosing to focus on undermining Mr. Shipp's credibility directly

9

rather than through Ms. Stevens and Ms. Townsend was a reasonable one. Mr. Turner's assertions as to what these witnesses might have said, had either been thoroughly cross-examined, are insufficient to overcome the presumption in favor of his attorney. Mr. Turner provides scant information as to what Ms. Townsend might have added to his case. *See* United States v. Harris, 394 F.3d 543, 555 (7th Cir. 2005) (the court declined to fill in the blanks as to what a witness, not called to testify, may have said).

Mr. Turner next contends that Mr. May did not sufficiently impeach the credibility of Mr. Shipp. Mr. Turner asserts that Mr. Shipp had admitted to bribing a law enforcement officer, dealing cocaine, knowing of a murder, and hiding this information for over four years. Had this information been introduced at trial, Mr. Turner contends, he would have been acquitted on Count 4. Mr. Turner claims that Mr. May was ineffective since he chose not to question Mr. Shipp's credibility or veracity despite the fact that he was a central government witness.

Mr. Shipp's pending and past criminal charges and his use and dealing in drugs was revealed during direct examination. The government specifically asked Mr. Shipp whether he was currently facing any charges to which Mr. Turner responded affirmatively and specified that they were for battery and aiding in a theft. On direct examination, Mr. Shipp admitted to having dealt crack cocaine and marijuana in the past. Mr. May further attacked Mr. Shipp's credibility during cross-examination and in closing specifically focusing on his past drug use and pressing the theory that Mr. Shipp had knowledge or past possession of the

10

weapons in question. When Mr. May tried to elicit more details from Mr. Shipp about the bribery investigation, the court sustained a relevancy objection. In light of this, Mr. May's decision not to further impeach Mr. Shipp, based on his belief that he had already been sufficiently discredited, isn't objectively unreasonable.

The prejudice prong of Strickland is unmet as well. Mr. May attacked Mr. Shipp's credibility on cross-examination and testimony was presented that Mr. Shipp previously had dealt in drugs; the jury chose to believe Mr. Shipp's testimony. How further evidence on this point would have led to Mr. Turner's acquittal is not clear.

Mr. Turner's last claim about Mr. May is that he failed to impeach Mr. Shipp's perjured testimony. To receive a new trial for perjured testimony, a defendant must establish: (1) the prosecution's case included perjured testimony, (2) the prosecution knew or should have known of the perjury, and (3) there is a likelihood that the false testimony affected the judgment of the jury. United States v. Saadeh, 61 F.3d 510, 523 (7th Cir. 1995).

During cross-examination Mr. May asked Mr. Shipp: "Are you now part of some major drug investigation that's going on in LaPorte County?" The government then asked for a sidebar to raise an objection. During the sidebar, the government informed the court that Mr. Shipp was scheduled to be a witness in a case and had received remuneration for it to get out of town because his life had been threatened. After the sidebar, Mr. May rephrased his question as: "Mr. Shipp, are you still assisting LaPorte County in their investigation of drug cases."

11

Mr. Shipp responded by stating: "Am I assisting them now? In different drug cases? No."

Mr. Turner believes it is clear from the record that Mr. Shipp gave false testimony. He says the government admitted that Mr. Shipp was cooperating in the drug investigation of a police officer during sidebar and yet Mr. Shipp testified that he wasn't assisting in drug cases. He further states that since the prosecutor, the court, and Mr. May were all aware of the false testimony, because of the sidebar that transpired seconds before, they should have objected instead of allowing it to go uncorrected. Mr. Turner believes that if Mr. Shipp "had been exposed for the liar he is and there is a reasonable probability that Petitioner would've been acquitted on count 4 of the indictment." In his affidavit, Mr. May responds that when Mr. Shipp testified that he was not currently assisting in any drug cases he had no reason to believe that statement was perjurious. Mr. May had also viewed the informant file on Mr. Shipp during trial.

Mr. Shipp's testimony cannot be characterized as perjury. Although Mr. Shipp had assisted in drug investigations in the past, he wasn't then aiding a drug investigation. Availability to testify at trial is not the same as actively taking part in a drug investigation by doing things such as the controlled buy he made in Mr. Turner's investigation. Since it was this sort of active participation in drug investigations that Mr. May's question evoked, Mr. Shipp's testimony cannot be labeled as perjury. Even if the court could somehow construe Mr. Shipp's answer to be perjury, it cannot have had any impact on the jury verdict. Mr. May had

12

attacked Mr. Shipp's credibility during cross-examination, including noting his drug history. That he was aiding in drug investigations could only have aided his credibility.

### INEFFECTIVE ASSISTANCE BY MR. LENYO

After trial, Mr. May moved to withdraw his appearance and the court appointed attorney Mark Lenyo to handle Mr. Turner's sentencing and appeal. Mr. Turner alleges that Mr. Lenyo was ineffective because he chose not to object to a two-level sentencing enhancement for Mr. Turner's leadership role in the offense. Mr. Turner argues that Mr. Shipp's testimony was the only testimony pertaining to his leadership role and Mr. Shipp testified that both Mr. Daniels and Mr. Turner were in charge. Mr. Turner asks to be re-sentenced at the appropriate guideline range.

Mr. Lenyo in his affidavit states that he filed numerous objections to the enhancements that the government sought. He decided to pursue the issues that he felt had the strongest chance of success. Mr. Lenyo challenged the firearm convictions because they presented the greatest exposure for Mr. Turner at sentencing. He further raised objections to the drugs quantity, obstruction of justice enhancement, grouping of counts, restraint of victim enhancement, and denial of acceptance of responsibility, since those were the strongest issues for sentencing purposes.

An attorney may strategically choose to ignore weaker arguments in favor of stronger ones. See United States v. Rezin, 322 F.3d 443, 446 (7th Cir. 2003) ("A defendant's lawyer has, it is certainly true, no duty to make a *frivolous* argument; and there is a tactical reason not to make weak arguments…they may distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor.") (emphasis in the original). Additionally, the record shows that Mr. Shipp and Ms. Stevens supported the leadership role finding. Mr. Shipp testified not only that Mr. Turner and Mr. Daniels sold drugs out of the apartment, but that people Mr. Turner knew from Hammond came over to sell as well. In response to the government's question "So was this location selling drugs 24/7?" Mr Turner responded "Yes." Ms. Stevens also admitted during her testimony that although both Mr. Turner and Mr. Daniels sold drugs out of the apartment, Mr. Daniels was present less frequently. At the sentencing hearing, Mr. Lenyo attacked six possible sentencing enhancements. Mr. Lenyo had a strategy in place. Choosing to ignore a weaker argument in favor of six stronger ones is not a decision a court will second guess. See United States v. Pergler, 233 F.3d 1005,1009 (7th Cir. 2000) ("we presume that the attorneys made reasonable judgments and decline to second guess strategic choices.")

Mr. Turner next claims that Mr. Lenyo was ineffective for failing to object to the court's reliance upon Mr. Turner's testimony to determine the drug quantity used for sentencing. Mr. Turner argues that the 50-150 gram determination that was used to enhance Mr. Turner's sentence on count 6 was based on his

14

testimony at trial. Since Mr. Turner also received an enhancement for giving false testimony, he contends that the court should not have relied on any of that testimony when determining his sentence. "Had [Mr. Lenyo] objected the government couldn't have proven Turner was responsible for 50-150 grams, and thus [h]e would've been sentenced to the amounts he admitted 6.48 grams."

As the government points out, nothing prevents a trial court from finding that some, but not all of a person's testimony, constituted perjury. Since Mr. Turner had already admitted to the drug offenses, it seems less likely that he would lie about those offenses. Mr. Lenyo objected to how the drug quantities were calculated, but not on this ground. This was a weak objection that might have been discarded in favor of the stronger ones that Mr. Lenyo chose, so for the reasons just explained, the court declines to second guess that strategy. Mr. Turner has also not presented convincing evidence that this objection would have prevailed and produced a lesser sentence.

Lastly, Mr. Turner alleges that Mr. Lenyo's assistance was ineffective for his failure to file a writ of certiorari with the United States Supreme Court as Mr. Turner requested. Mr. Lenyo admits that he knew that Mr. Turner wanted to pursue this option. In Mr. Lenyo's opinion, however, the chance of their petition being granted was very remote based on the issues raised and the court of appeals' limited remand, so he declined to file. Mr. Lenyo didn't notify Mr. Turner of his decision until after the time to file such a petition had lapsed.

Mr. Turner relies upon Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994), which held that an attorney is *per se* in violation of the Sixth Amendment when he fails to take an appeal if he is requested to do so in writing. Mr. Turner's reliance is misplaced. His attorney didn't fail to take an appeal; he failed to petition for a writ of certiorari. Unlike a direct appeal, a petition for writ of certiorari is discretionary and the right to an attorney doesn't exist at this stage. Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("there is no constitutional right to *any* assistance of counsel in seeking discretionary, third-tier review.") (emphasis in the original)). For this reason, "shortcomings of counsel at that stage therefore cannot violate the sixth amendment." Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). A defendant cannot bring a §2255 claim based on ineffective assistance of counsel when there was no right to an attorney. Kitchen v. United States, 227 F.3d 1014, 1018 (7th Cir. 2000).

CONCLUSION

For the reasons stated above, the court DENIES Mr. Turner's §2255 petition (Doc. No. 1).

SO ORDERED.

ENTERED    September 4, 2007

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

16

17